UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH E. GLYNN,<br><br>         Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>         Defendants. | No. 2: 11-cv-3165 LKK KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendant Rolon violated the Equal Protection Clause. Pending before the court is defendant's summary judgment motion. (ECF No. 45.) Defendant moves for summary judgment on the grounds that he is entitled to qualified immunity and pursuant to 42 U.S.C. § 1997e(e) on the grounds that plaintiff failed to allege a physical injury. For the following reasons, the undersigned recommends that defendant's motion be granted.

Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

1

1    Under summary judgment practice, the moving party always bears the initial
2 responsibility of informing the district court of the basis for its motion, and identifying those
3 portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,
4 together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue
5 of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed.
6 R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving
7 party need only prove that there is an absence of evidence to support the non-moving party's
8 case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.),
9 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P.
10 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not
11 have the trial burden of production may rely on a showing that a party who does have the trial
12 burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary
13 judgment should be entered, after adequate time for discovery and upon motion, against a party
14 who fails to make a showing sufficient to establish the existence of an element essential to that
15 party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477
16 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving
17 party's case necessarily renders all other facts immaterial." Id. at 323.

18    Consequently, if the moving party meets its initial responsibility, the burden then shifts to
19 the opposing party to establish that a genuine issue as to any material fact actually exists. See
20 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to
21 establish the existence of such a factual dispute, the opposing party may not rely upon the
22 allegations or denials of its pleadings, but is required to tender evidence of specific facts in the
23 form of affidavits, and/or admissible discovery material in support of its contention that such a
24 dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party
25 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
26 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
27 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
28 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

Plaintiff's Allegations

This action is proceeding on the original verified complaint filed November 30, 2011, as to defendant Rolon only. (ECF No. 1.)

Plaintiff alleges that he uses a wheelchair. (Id. at 6.) Plaintiff alleges that on December 3, 2010, he entered the dining hall for his morning meal. (Id.) As is customary for inmates using wheelchairs, plaintiff called out "carry out." (Id.) This statement signaled that plaintiff was ready for his meal to be brought to him. At this time, plaintiff was the only person in the dining

3

1 hall. (Id.)

2 Plaintiff alleges that after he called out "carry out," defendant Rolon looked at plaintiff,
3 turned away, and ignored him. (Id.) Plaintiff alleges that defendant Rolon continued his
4 conversation with an inmate worker. (Id.) A few other inmates then entered the dining hall,
5 walked up the service line and got their trays with no problem. (Id.) Plaintiff called out "carry
6 out" two more times, but defendant Rolon ignored him. (Id. at 6-7.) Approximately fifteen
7 minutes later, eighteen other inmates had entered the dining hall and received their meals. (Id. at
8 7.) Plaintiff had still not received his meal. (Id.) At this time, inmate worker Johnson asked
9 plaintiff why he had not received his meal. (Id.) Inmate Johnson then called out "carry out, this
10 guy has been waiting fifteen minutes." (Id.) Defendant Rolon then shouted out in an angry
11 manner, "so what, he can 602 me." (Id.)

12 Plaintiff alleges that defendant Rolon discriminated against him based on his disability by
13 refusing to bring him his meal in violation of the Equal Protection Clause.

14 Legal Standards for Qualified Immunity and Equal Protection

15 *Legal Standard for Qualified Immunity*

16 Government officials enjoy qualified immunity from civil damages unless their conduct
17 violates "clearly established statutory or constitutional rights of which a reasonable person would
18 have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of
19 qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting
20 the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier
21 v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236
22 (2009) ("The judges of the district courts and the courts of appeals should be permitted to
23 exercise their sound discretion in deciding which of the two prongs of the qualified immunity
24 analysis should be addressed first in light of the circumstances in the particular case at hand").

25 The other inquiry is whether the right was clearly established. Saucier, 533 U.S. at 201.
26 The inquiry "must be undertaken in light of the specific context of the case, not as a broad general
27 proposition...." Id. "[T]he right the official is alleged to have violated must have been 'clearly
28 established' in a more particularized, and hence more relevant, sense: The contours of the right

4

1 must be sufficiently clear that a reasonable official would understand that what he is doing
2 violates that right." Id. at 202 (citation omitted).  In resolving these issues, the court must view
3 the evidence in the light most favorable to plaintiff and resolve all material factual disputes in
4 favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).  Qualified
5 immunity protects "all but the plainly incompetent or those who knowingly violate the law."
6 Malley v. Briggs, 475 U.S. 335, 341 (1986).

*Legal Standard for Equal Protection Claim*

Prisoners are protected under the Equal Protection Clause against invidious discrimination based on race.  Wolff v. Mc Donnell, 418 U.S. 539, 556 (1974).  "To state a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 194, 1194 (9th Cir. 1998).  Equal protection claims are not necessarily limited to racial and religious discrimination.  See Lee v. City of Los Angeles, 250 F.3d 668, 686–67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class.)

To establish a violation of the Equal Protection Clause, a plaintiff in a Section 1983 claim must show defendants, "acted in a discriminatory manner and that the discrimination was intentional."  Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000).  A "long line of Supreme Court cases make clear that the Equal Protection clause requires proof of discriminatory intent or motive."  Navarro v. Block, 72 F.3d 712, 716 (9th Cir. 1995).  "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status."  Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original).  Therefore, to avoid summary judgment, a plaintiff "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the challenged conduct was motivated by discriminatory intent."  Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation and quotation marks omitted).

////

5

Undisputed Facts

On December 3, 2010, plaintiff was an inmate at the California Medical Facility ("CMF"). (ECF No. 1, 2.) Plaintiff is a wheelchair bound inmate. (Id. at 6.)

From June 2010 through February 2011, defendant Rolon was a correctional officer at CMF, assigned to the culinary section, which consists of the kitchen and dining halls where meals are prepared and served to inmates. (ECF No. 45-3 at 1.) As a correctional officer in culinary, defendant Rolon's duties included supervising all inmates in dining hall # 3, the largest dining hall. (Id.)

Inmates are released to come to the dining halls by housing unit. (Id. at 2.) Once inmates from a housing unit finish eating, those inmates would clear the dining hall, and inmates in the next housing unit are released to come to the dining halls for the meal. (Id.) Once inmates from a housing unit finish eating, the inmate workers clear up the trays, clean the dining hall and refill the food trays. (Id.)

When refilling the food trays, inmate workers would have to leave the dining hall, return to the kitchen, obtain the new food and return to the dining halls with the new food. (Id.) This usually took approximately ten minutes. (Id.) Only the quantity of food required to serve a full dining hall is kept in the dining hall for service. (Id.)

Housing units had inmates who were both wheelchair and non-wheelchair bound. (Id.)

Sometimes, wheelchair bound inmates would be delayed in coming to the dining hall for meals due to the time it would take them to travel from the housing unit to the dining hall. (Id.) Thus, the wheelchair bound inmates would sometimes come into the dining hall after meal service had started or after meal service had ended and the dining hall was in the process of being prepared for the next housing unit, which included cleaning the hall, obtaining new food from the kitchen and refilling the service trays in the dining hall. (Id.)

It usually took three hours to serve the morning meal to all housing units, where the morning meal was served in a rotating unit fashion to inmates between 5:30 a.m. and 8:30 a.m. (Id.)

////

6

On December 3, 2010, plaintiff arrived in dining hall # 3 in a wheelchair for morning meal. (Id.) Upon his arrival, plaintiff sat at a table and called "carry out." (ECF No. 1 at 6.) Defendant Rolon heard plaintiff call out "carry out." (ECF No. 45-3 at 3.)

"Carry out" is a term that applies only to wheelchair bound inmates. (Id.) When the wheelchair bound inmate has seated himself at the wheelchair accessible dining table, he would call out "carry out" indicating he was ready to have his tray delivered to him by an inmate worker. (Id.)

On December 3, 2010, approximately 18 other inmates in wheelchairs, with canes and other instruments to assist them with their disabilities, arrived in dining hall # 3.[1] (Plaintiff's Deposition at 26-27.) Some of these other disabled inmates arrived before plaintiff received his meal, and some after. (Id. at 27.) The other disabled inmates had special diet cards. (Id. at 28.) The inmates in wheelchairs with food cards wheeled themselves up to available kitchen workers to get their meals.[2] (Id.)

Plaintiff waited approximately eight to fifteen minutes to receive his morning meal. (Id. at 24.) When it arrived, plaintiff's food was in the same condition as the food received by the other inmates. (Id. at 22.)

Disputed Facts

The parties dispute whether food was available for plaintiff when he arrived at the dining hall. In his declaration submitted in support of the pending summary judgment motion, defendant states that plaintiff arrived when one housing unit had finished the morning meal and the dining

---

[1] In his complaint, plaintiff alleges that 18 inmates entered the dining hall and received their food. The complaint does not allege that these 18 inmates were disabled, as plaintiff stated at his deposition.

[2] In his statement of undisputed facts, defendant states that it is undisputed that on December 3, 2010, other inmates in wheelchairs arrived in dining hall # 2, called out "carry out," and received their meals. (ECF No. 45-2 at 3.) Defendant cites plaintiff's deposition testimony at page 28:1-3 in support of this alleged undisputed fact. (Id.) After carefully reviewing plaintiff's deposition testimony, it appears that plaintiff testified that the other inmates in wheelchairs who received their meals were the inmates with special diet cards who went up to available staff for their food. (Plaintiff's Deposition at 28:1-12.) Plaintiff did not testify that other inmates in wheelchairs without special meal cards called out "carry out" and received their meals.

1   hall was being prepared for the next unit.  (ECF No. 45-3 at 2.)  According to defendant, upon

2   plaintiff's arrival, defendant had sent an inmate worker to obtain the food for the next unit.  (Id.)

3   Defendant Rolon maintains that when plaintiff arrived, there was no food available to serve him

4   as it was being retrieved from the kitchen.  (Id. at 3.)  In his declaration, defendant Rolon does not

5   address the issue of when the food arrived in the dining hall from the kitchen.

6        In his verified complaint, plaintiff alleges that other inmates received their meals while he

7   waited.  Plaintiff alleges that when he entered the dining hall, he was the only inmate there for at

8   least four to six minutes.  (ECF No. 1 at 7.)   In his unverified response to defendant's statement

9   of undisputed facts, plaintiff contends that if the dining hall was being prepared for the next unit,

10  he would have seen more kitchen workers in the dining hall.  (ECF No. 51 at 2.)

11        The parties dispute whether plaintiff was sitting in the dining hall at a table where

12  defendant Rolon would have been able to communicate with him.  In his declaration submitted in

13  support of the pending summary judgment motion, defendant Rolon states that because plaintiff

14  was sitting at a table in the back of the dining hall, he could not converse with him and advise him

15  that food was not ready for delivery.  (ECF No. 45-3 at 3.)  In his verified complaint, plaintiff

16  alleges that after he called out "carry out," defendant looked at him then turned away.  (ECF No.

17  1 at 6.)  In his unverified response to defendant's statement of undisputed facts, plaintiff states

18  that he was sitting two to three tables from the serving line so that defendant Rolon could have

19  spoken to him.  (ECF No. 51 at 2.)

20        The parties dispute whether defendant Rolon stated, "he can 602 me," after the inmate

21  worker told him that plaintiff had not received his meal.  In his declaration submitted in support

22  of the pending summary judgment motion, defendant Rolon states that he does not recall any

23  contact with plaintiff aside from him calling "carry out" on December 3, 2010, and that he never

24  spoke to plaintiff on that date.  (ECF No. 45-4 at 3.)  In his verified complaint, plaintiff alleges

25  that defendant made this statement.  (ECF No. 1 at 7.)

26  ////

27  ////

28  ////

Discussion

*Physical Injury*

Defendant moves to dismiss this action pursuant to § 42 U.S.C. § 1997e(e):

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18.)

42 U.S.C. § 1997e(e)

Defendant argues that plaintiff alleges no physical injury as required by 42 U.S.C. § 1997e(e).

In Canell v. Lightner, 143 F.3d 1210 (9th Cir. 1998), the Ninth Circuit considered the application of the physical injury requirement of § 1997e(e) to a First Amendment claim. The Ninth Circuit found that the prisoner was not asserting a claim for mental or emotional injury. 143 F.3d at 1213.

> He is asserting a claim for a violation of his First Amendment rights. The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. Therefore, § 1997e(e) does not apply to First Amendment claims regardless of the relief sought.

Id.

The Ninth Circuit's reasoning in Canell is equally applicable to a claim alleging discrimination under the Equal Protection Clause. An equal protection violation, like a First Amendment violation, entitles a plaintiff to judicial relief wholly aside from any physical injury he can show or any mental or emotional injury he may have incurred. For these reasons, defendant's motion for summary judgment based on plaintiff's failure to allege a physical injury should be denied.

*Qualified Immunity*

Defendant moves for summary judgment on grounds that he is entitled to qualified immunity. The undersigned first considers whether, taking the facts in the light most favorable to plaintiff, defendant violated plaintiff's constitutional rights.

The facts, taken in the light most favorable to plaintiff, are that defendant Rolon ignored plaintiff's request for a meal to be brought to him even though there was food in the dining hall. Plaintiff allegedly waited eight to fifteen minutes to receive his meal. Plaintiff's meal was in the same condition as the meals received by inmates who did not have to wait for their food. For the following reasons, the undersigned finds that these facts do not show that defendant violated plaintiff's right to equal protection.

Plaintiff's evidence, consisting primarily of his allegations in his verified complaint, is not sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the challenged conduct was motivated by discriminatory intent. Plaintiff does not allege that defendant Rolon discriminated against him on any other occasion based on his disability. Plaintiff does not allege that defendant Rolon discriminated against any other disabled inmate on the basis of their disability on December 3, 2010, or on any other occasion. Plaintiff provides no evidence, for example, that defendant Rolon did not assist other disabled inmates in obtaining their meals on December 3, 2010. Plaintiff does not allege that defendant Rolon used language suggesting that he was motivated to discriminate against plaintiff based on his disability. Defendant Rolon's alleged statement that plaintiff could file a 602 against him does not clearly demonstrate that defendant Rolon was motivated to discriminate against plaintiff based on his disability.

The undersigned also observes that, according to plaintiff, defendant Rolon permitted disabled inmates with special meal cards to obtain their meals from inmate workers. Evidence that defendant Rolon prevented the other disabled inmates from obtaining their special meals from inmate workers would be evidence of a discriminatory intent.

Plaintiff alleges that, on one occasion, defendant Rolon did not order an inmate worker to obtain his meal for him, as a result of which plaintiff was delayed in receiving his meal for eight to fifteen minutes. It is not reasonable to infer from these bare allegations that in delaying plaintiff's receipt of his meal, defendant Rolon was motivated to discriminate against plaintiff based on his disability.

////

Because the undersigned finds that defendant Rolon did not violate plaintiff's right to equal protection, it is not necessary to address the second prong of the qualified immunity analysis.

Accordingly, IS HEREBY RECOMMENDED that defendant's summary judgment motion (ECF No. 45) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 17, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

gl3165.sj